IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| MIGUEL ANGEL CASTILLO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE CITY OF CHICAGO, Chicago Police | ) | |
| Officer LUIS D. CONTRERAS (STAR #13529), | ) | |
| Chicago Police Officer SUSANA LA CASA | ) | JURY TRIAL DEMANDED |
| (STAR # 8688), Chicago Police Officer | ) | |
| EDENS, AND UNKNOWN CHICAGO POLICE | ) | |
| OFFICERS, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, MIGUEL ANGEL CASTILLO ("Plaintiff"), by his attorneys, LOEVY & LOEVY and DANIEL J. STOHR, complains of Defendants, the CITY OF CHICAGO, Chicago Police Officer LUIS D. CONTRERAS (STAR # 13529), Chicago Police Officer SUSANA LA CASA (STAR # 8688), Chicago Police Officer [First Name Unknown] EDENS and UNKNOWN CHICAGO POLICE OFFICERS (collectively, "Defendant Officers") and states as follows:

### Jurisdiction and Venue

1. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

2.    This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331 and 1367.

3.    Venue is proper under 28 U.S.C. § 1391(b).  All parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within this district.

**Facts**

4.    Plaintiff is a 18-year-old resident of Chicago.

5.    On or about the afternoon of Saturday, March 19, 2011, Plaintiff and three of his friends decided to walk to a neighborhood restaurant for lunch.

6.    While walking toward the restaurant in the Humboldt Park neighborhood, a Chicago police car pulled up alongside them, and Defendant Edens and an unknown uniformed officer exited the vehicle.  Without justification or provocation, these two Defendant Officers drew their guns and began questioning Plaintiff and the other three individuals about what they were doing and where they were going.

7.    Although they were committing no crime, all four individuals, including Plaintiff, were handcuffed and searched by the two Defendant Officers.

8.    Defendant Edens and the other Defendant Officer asked each of the four individuals for their names and addresses, and

the officers appeared to run the names using the computer terminal located inside their police car.

9. While Plaintiff and his companions were handcuffed, another marked Chicago Police car arrived at the scene. Two uniformed police officers, Defendants Luis Contreras and Susana La Casa, exited the car and approached the group.

10. Defendants Contreras and La Casa asked Plaintiff for his name and address. When Plaintiff answered, they accused him of lying.

11. Defendant Contreras approached Plaintiff and asked him if he was in a gang. The Defendant Officers then began taunting Plaintiff and his companions by saying that the "real" gang in the neighborhood was the Latin Kings gang.

12. Defendant Edens and the other Defendant Officer who had first stopped Plaintiff then put one of Plaintiff's companions into their police car.

13. Plaintiff and two of his companions remained on the street. Shortly afterward, Defendants Contreras and La Casa put Plaintiff, who was still handcuffed, into the back of their police vehicle. Plaintiff had committed no crime, and at no time did the Defendant Officers explain why they arrested him.

14. Once in the back of the police car, Defendants La Casa and Contreras starting mocking Plaintiff for not being "hard" or

3

part of the "real gang." They then told Plaintiff that they were taking him to specific intersections that were well-known parts of the territory occupied by the Latin Kings gang.

15. Plaintiff did not belong to the Latin Kings and had no affiliation with them. Upon hearing the officers' threats, Plaintiff began to fear that he would be left in an unknown and extremely dangerous area.

16. During his journey in the officers' vehicle, the officer continued to mock and verbally threaten Plaintiff. Plaintiff asked why he had been arrested. In response, Defendant La Casa pulled the car over. Defendant Contreras exited the vehicle, opened the rear car door where Plaintiff sat, and assaulted him.

17. Contreras got back in the car, and they continued driving until they arrived in front of a home within the territory known to be controlled by the Latin Kings. The officers parked their police vehicle there.

18. Several men and women who had been congregating outside that home noticed the police car and began speaking with Defendants La Casa and Contreras. One of the Defendant Officers told them, "We got somebody for you," or words to that effect. The Defendant Officers then opened the driver-side rear door,

thus exposing Plaintiff to the group of men.  At some point, one of the Defendant Officers removed Plaintiff's handcuffs.

19.   For the next several minutes, Plaintiff sat in police car as the group of men threatened to attack him.  At least ten men swarmed around the car, flashed gang symbols, and threatened him using provocative and profanity-laced insults.  The men threatened to hurt Plaintiff, used racial slurs, and announced-- verbally and through hand signs--their membership in the Latin Kings gang.  The Defendant Officers encouraged this behavior by alternatively standing idly by and by hurling their own insults at Plaintiff.

20.   Plaintiff, afraid for his life, attempted to cover his face with his hands.  Despite his efforts to keep hidden, however, it was unavoidable that his face was exposed, and the group of men saw him.  Plaintiff sat helplessly as the group of men and Defendant Officers verbally assaulted him.

21.   At some point, the passenger-side rear door was also opened, leaving Plaintiff exposed on both sides.  The increasingly agitated group of men was now approaching Plaintiff from both sides.

22.   Finally, the Defendant Officers decided to leave the area.  They returned to the car and drove away with Plaintiff. A short distance later, the officers pulled over and told

Plaintiff to get out of the car. Still within the known Latin Kings neighborhood, and thus in great personal danger, Plaintiff was afraid that he would be injured or killed if he exited the car.

23. The group which had menaced and harassed Plaintiff just moments earlier saw the police car stopped up the street and began approaching.

24. Defendants La Casa and Contreras ultimately drove a few more blocks and then removed Plaintiff from their car, still in known Latin Kings territory, notwithstanding that Plaintiff did not live there.

25. As soon as Plaintiff exited the police vehicle, he could still see several of the men up the street looking at him. Plaintiff ran as fast as he could for several blocks until he eventually arrived at his friend's home and went inside.

26. Plaintiff was never charged with any crime.

27. Shortly after this incident, Plaintiff made a complaint about the Defendant Officers' misconduct to the Independent Police Review Authority ("IPRA").

28. Additionally, just over one minute of Plaintiff's experience with the group of gang members was captured on video and anonymously posted on the internet. A member of the

6

Chicago-based WBEZ news station obtained the video and ran a story on it shortly thereafter.

29. Upon the media release of this video, Chicago Police Department interim superintendent Terry Hillard described the Defendant Officers' conduct as "not professional." Hillard announced that Defendants La Casa and Contreras had been placed on desk duty pending the completion of an Internal Affairs investigation. On information and belief, the Defendant Officers continue to be employed by the Chicago Police Department.

30. It is common for Chicago police officers to take individuals believed to be in one gang and place them in a different gang's territory. This regular practice served no lawful purpose. Instead, it was done, *inter alia*, to intimidate young people in the community and to gain advantage over suspected gang members, in gross disregard for the safety of those taken to dangerous gang areas.

31. Defendant City of Chicago is deliberately indifferent to the fact that Chicago police officers are engaging in this practice. Indeed, in response to Plaintiff's IPRA complaint, an IPRA officer stated that IPRA was aware of similar conduct by police officers in the past.

## Count I -- 42 U.S.C. § 1983
## Unreasonable Seizure

32.    Each Paragraph of this Complaint is incorporated herein.

33.    As described above, one or more of the Defendant Officers unlawfully seized Plaintiff, and in the course of that seizure, engaged in harassing and abusive behavior toward Plaintiff, all in violation of the Fourth Amendment to the United States Constitution.

34.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

35.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

36.    The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

a.    As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the type of misconduct at issue here by failing to adequately train, supervise, and control its

8

officers, such that its failure to do so manifests deliberate indifference;

      b.    Specifically, as a matter of both policy and practice, the Chicago Police Department facilitates the type of misconduct at issue here by failing to adequately investigate, punish, and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff; specifically, police officers who unlawfully seize citizens believed to be in a gang and force that individual into a rival gang's territory without any lawful purpose can be confident that the City will not investigate those accusations and will refuse to recommend discipline even where the Officer has engaged in an unreasonable seizure in violation of the Fourth Amendment;

      c.    Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the City of Chicago, and the Chicago Police Department's Internal Affairs Division, make findings of wrongdoing in a disproportionately small number of cases;

      d.   City policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department.  Police officers routinely fail to report instances of police misconduct and lie to protect each other from punishment, and go un-disciplined for doing so;

      e.   The City of Chicago has failed to act to remedy the patterns of abuse, despite actual knowledge of the same, thereby causing the types of injuries alleged here;

      f.   The City of Chicago, acting by and through its agents, has knowledge of, and the relevant policy-makers have failed to act to remedy, the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby tacitly approving and ratifying the type of misconduct alleged here.

37.  As a result of the individual Defendants' unreasonable seizure and the policy and practices of the City, Plaintiff has suffered pain and injury, including emotional distress.

38.  The misconduct described in this Count was undertaken by the Defendant Officers within the scope of their employment and under color of law.

### Count II -- 42 U.S.C. § 1983
### Substantive Due Process

39.  Each Paragraph of this Complaint is incorporated

10

herein.

40.   As described more fully above, one or more of the individual Defendants took Plaintiff into custody and placed him in an environment that the officers knew or reasonably should have known would pose a danger to Plaintiff.

41.   By placing Plaintiff in a position of danger that he would not have otherwise faced, the individual Defendants assumed a duty to protect him but failed to do so.

42.   The Defendant Officers failed to protect Plaintiff from harm and/or prevented Plaintiff from helping himself.  By acting in this manner, one or more of the Defendant Officers increased Plaintiff's risk of harm.

43.   The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

44.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

45.   The Defendant Officers' misconduct was undertaken pursuant to the Defendant City of Chicago's policy, practice, and custom, in the manner described above.

46.   As a result of the unjustified violation of Plaintiff's rights by the individual Defendants, undertaken

pursuant to the City's policy and practice as described above, Plaintiff has suffered injury, including emotional distress.

## Count III -- 42 U.S.C. § 1983
### False Arrest/Unlawful Detention

47.  Each Paragraph of this Complaint is incorporated herein.

48.  As described more fully above, one or more of the individual Defendants unlawfully detained and falsely arrested Plaintiff without justification and without probable cause.

49.  The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

50.  The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

51.  The Defendant Officers' misconduct was undertaken pursuant to the Defendant City of Chicago's policy, practice, and custom, in the manner described above.

52.  As a result of the unjustified violation of Plaintiff's rights by the individual Defendants, undertaken pursuant to the City's policy and practice as described above, Plaintiff has suffered injury, including emotional distress.

12

## Count IV -- 42 U.S.C. § 1983
## Failure to Intervene

53. Each Paragraph of this Complaint is incorporated herein.

54. As described more fully above, one or more of the individual Defendants had a reasonable opportunity to prevent the violation of Plaintiff's constitutional rights as set forth above had they been so inclined, but failed to do so.

55. Defendant Officers' actions were undertaken intentionally, with malice and reckless indifference to Plaintiff's rights.

56. As a result of the individual Defendants' failure to intervene, undertaken pursuant to the City's policy and practice as described above, Plaintiff has suffered injury, including emotional distress.

## Count V -- 42 U.S.C. § 1983
## Conspiracy to Deprive Constitutional Rights

57. Each Paragraph of this Complaint is incorporated herein.

58. As described more fully above, there was an agreement between the individual Defendants and other unknown co-conspirators to deprive Plaintiffs of their constitutional rights.

13

59.  Specifically, the Defendants conspired by concerted action to accomplish an unlawful purpose by an unlawful means. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

60.  The conspiring Defendants' actions were undertaken intentionally, with malice and reckless indifference to Plaintiff's rights.

61.  As a result of individual Defendants' conspiracy, undertaken pursuant to the City's policy and practice as described above, Plaintiff has suffered injury, including emotional distress.

### Count VI -- State Law Claim
### Assault

62.  Each Paragraph of this Complaint is incorporated herein.

63.  As described in the preceding paragraphs, the conduct of one or more of the individual Defendants, acting under color of law and within the scope of his employment, created in Plaintiff the reasonable apprehension of imminent harm, undertaken willfully and wantonly, and proximately causing Plaintiff's injuries.

64.    The actions of the individual Defendants were undertaken intentionally, with malice and reckless indifference to Plaintiff's rights and to the rights of others.

66.  As a result of individual Defendants' actions, Plaintiff has suffered injury, including emotional distress.

### Count VII – State Law Claim
### False Arrest / Detention

67.    Each of the foregoing paragraphs is incorporated as if fully stated herein.

68.    As described more fully above, Plaintiffs were arrested and detained by the Defendant Officers without lawful justification.

69.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiffs' constitutional rights.

70.    The misconduct described in this Count was undertaken by the Defendant Officers within the scope of their employment and under color of law such that their employer, City of Chicago, is liable for their actions.

71.  As a result of individual Defendants' actions, Plaintiff has suffered injury, including emotional distress.

### Count VIII -- State Law Claim
### False Imprisonment

72.   Each Paragraph of this Complaint is incorporated herein.

73.   Plaintiff was handcuffed and taken into police custody, and thereby had his liberty to move about unlawfully restrained, despite individual Defendants' knowledge that there was no probable cause for doing so.

74.   The actions of the individual Defendants were undertaken intentionally, with malice and reckless indifference to Plaintiff's rights and to the rights of others.

75.   As a result of this wrongful infringement of Plaintiff's rights, Plaintiff has suffered injury, including emotional distress.

### Count IX – State Law Claim
### Intentional Infliction of Emotional Distress

76.   Each Paragraph of this Complaint is incorporated as if fully stated herein.

77.   In the manner described more fully above, the misconduct of the Defendant Officers toward Plaintiff constituted intentional infliction of emotional distress.

78.   The misconduct described in this Count was extreme and outrageous.

16

79.   The misconduct described in this Count was undertaken with the intent to inflict severe emotional distress or with knowledge that there was a high probability that their conduct would inflict such distress.

80.   As a result of the Defendant Officers' misconduct, Plaintiff experienced emotional distress.

81.   The misconduct described in this Count was undertaken by the Defendant Officers within the scope of their employment and under color of law such that their employer, City of Chicago, is liable for their actions.

### Count X - State Law Claim
### Conspiracy

82.   Each of the foregoing paragraphs is incorporated as if fully stated herein.

83.   In the manner described more fully above, the Defendant Officers entered into an agreement among themselves and other unknown police officers to participate in an unlawful act or act in an unlawful manner toward Plaintiff, including by conspiring to falsely detain and assault Plaintiff, falsely arrest him, and intentionally inflict emotional distress upon him.

17

84.     The Defendant Officers committed one or more overt acts to further their common scheme of participating in an unlawful manner toward Plaintiff.

85.     As a proximate result of this conspiracy, Plaintiff suffered damages, including but not limited to emotional distress.

86.     The misconduct described in this Count was undertaken by the Defendant Officers within the scope of their employment and under color of law such that their employer, City of Chicago, is liable for their actions.

### Count XI -- State Law Claim
### Respondeat Superior

87.     Each Paragraph of this Complaint is incorporated herein.

88.     In committing the acts alleged in the preceding paragraphs, the individual Defendants were members and agents of the Chicago Police Department acting at all relevant times within the scope of their employment.

89.     Defendant City of Chicago is liable as principal for all torts committed by its agents.

### COUNT XII -- State Law Claim
### Indemnification

90.     Each Paragraph of this Complaint is incorporated herein

91.   Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

92.   The individual Defendants are or were employees of the Chicago Police Department who acted within the scope of their employment in committing the misconduct described above.

WHEREFORE, MIGEUL ANGEL CASTILLO respectfully requests that this Court enter judgment in his favor and against Defendants, the CITY OF CHICAGO, CHICAGO POLICE OFFICER LUIS D. CONTRERAS, STAR #13529, OFFICER SUSANA LA CASA, STAR # 8688, OFFICER [First Name Unknown] EDENS and UNKNOWN CHICAGO POLICE OFFICERS, awarding compensatory damages and attorneys' fees, along with punitive damages against the DEFENDANT OFFICERS in their individual capacities, as well as any other relief this Court deems just and appropriate.

**JURY DEMAND**

MIGUEL ANGEL CASTILLO hereby demands a trial by jury pursuant to Federal Rule of Civil, Procedure 38(b) on all issues so triable.

19

RESPECTFULLY SUBMITTED,


/s/ Anand Swaminathan
Attorneys for Plaintiffs

Arthur Loevy
Jon Loevy
Roshna Bala Keen
Anand Swaminathan
LOEVY & LOEVY
312 North May, Suite 100
Chicago, IL 60607
(312) 243-5900

Daniel J. Stohr
222 N. LaSalle St.
Suite 200
Chicago, IL  60601
(312) 726-1180

20