**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MIGUEL ANGEL CASTILLO** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **2011 CV 07359** |
| **THE CITY OF CHICAGO, Chicago Police** | ) | |
| **Officer Luis D. Contreras,** | ) | |
| **Chicago Police Officer Susana La Casa** | ) | **Hon. Suzanne B. Conlon** |
| **Chicago Police Officer Michael Edens,** | ) | |
| **Chicago Police Officer Gregory Sweeney** | ) | **Magistrate Judge Keys** |
| **and Unknown Chicago Police Officers,** | ) | |
|     **Defendants.** | ) | |

**<u>DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO COMPEL</u>**

Defendant Officers Luis Contreras, Susana LaCasa, Michael Edens, Gregory Sweeney and the City of Chicago (Defendants), by one of their attorneys, and in Response to Plaintiff's Motion to Compel state as follows:

**<u>Defendants Provided Plaintiff with the Complete Substantive Records
of the IAD File at Issue</u>**

The Plaintiff is falsely giving the court the impression that Defendants only gave Plaintiff "some of the records in the IAD file". To the contrary, Defendants gave Plaintiff almost the entire IAD file (over 350 pages). Defendants provided Plaintiff with the entire investigative file regarding this incident. The only portion of the file that was not supplied to Plaintiff is IAD's summary report, which includes its preliminary findings and recommendations. These findings have been sent to the appropriate City Departments for review.

Plaintiff has the investigative file which allows for his review and analysis of this case and the IAD investigation. It is premature and prejudicial for the Plaintiff to receive the

preliminary findings and recommendations. Furthermore, it is unfair for Plaintiff and/or his expert to make any case analysis or opinion of this matter based on the preliminary findings. In fact, not even Officers Contreras and LaCasa (who were the officers being investigated in this Complaint Register ("CR")) have been informed of any preliminary findings or recommendations.

Plaintiff argued that the preliminary findings and recommendations are probative to their *Monell* claims against the City of Chicago. First, the City of Chicago filed a Motion to Bifurcate which is currently pending before Judge Conlon. However, even if the *Monell* claim is not bifurcated, it is still prejudicial to give the Plaintiff the preliminary findings and recommendations. It is clear Plaintiff wants to use the preliminary findings and recommendations as evidence regarding Plaintiff's *Monell* claim against the City of Chicago. The Plaintiff's *Monell* claim against the City of Chicago involves various Departments in the City of Chicago, including the City Council. It is absurd to use the preliminary findings and recommendations of IAD, as evidence against the entire City of Chicago.

Furthermore, Plaintiff cited various cases, which he argues supports his claim that he should receive the preliminary recommendations and findings of IAD. However, these cases are completely distinguishable to the case at hand. In the cases cited by Plaintiff, the City of Chicago refused to turn over substantive portions of the actual CR investigation file arguing the files were "still open" or "still active". In the case at issue, Defendants have given the Plaintiff the entire substantive IAD investigative file. The **only** portions of the file that Defendants have not given the Plaintiff were the summary report, which includes the preliminary findings and recommendations of IAD. Instead, the preliminary recommendations and findings of IAD should be considered a pre-decisional discussion or recommendation made by IAD to the City of

Chicago. Therefore, the preliminary recommendations and findings should be considered confidential until they are approved by the City of Chicago. *See Guzman v. City of Chicago*, 1:09-cv-7570 (N.D. Ill Jan. 7, 2011) (Minute Order, Dkt. No. 60, attached as Exh A). In *Guzman*, the Court found that the summary report prepared by an IPRA investigator consisted of findings that are intended to be passed on to IPRA's next level of supervision in order for IPRA to formulate an official position with respect to the incident at issue. (*See* Exh. A, pg 8). "Thus, the City is entitled to invoke the privilege with respect to the summary report and discussions related to its content." *Id*. Likewise, in this case, the preliminary IAD recommendations and findings are currently being reviewed. Therefore, the preliminary IAD recommendations and findings must be considered confidential until they are reviewed and approved by the City of Chicago. This is especially true given the fact that Plaintiff would like to use any findings and recommendations as evidence regarding his *Monell* claim against the City.

Thus far, Defendants have given Plaintiff the entire substantive file of the IAD investigation of this matter. The only portions withheld were the summary report, which includes the preliminary findings and recommendations of IAD. Plaintiff has plenty of evidence which shows IAD's investigation. Plaintiff has everything that he and any potential expert would need to formulate an analysis of this case and the IAD investigation. Defendants would be unfairly prejudiced if they are forced to release preliminary recommendations and findings.

### Evidence about Former CPD Officers Alex Guerrero and Antonio Martinez are Irrelevant and Highly Prejudicial

The Plaintiff is attempting to use the arrest and indictment of two non-party police officers as evidence against the individual defendant officers in the case at bar. Plaintiff has made voluminous requests for information about two non-defendant officers, Guerrero and

Martinez. (*See* Plaintiff's Motion to Compel, pgs 6-7; *see also*, Defendants' Group Exh. B, also attached to Plaintiff's Motion to Compel as his Group Exh. A). This court should deny Plaintiff's Motion to Compel for this information because Plaintiff's requests are a mere fishing-expedition in which Plaintiff is attempting to locate irrelevant and highly prejudicial information.

First, Plaintiff makes no allegations that former officers Guerrero or Martinez were ever involved in this case. Furthermore, Plaintiff claims that he believes a non-party former officer Martinez, is Defendant Contreras' former partner. However, Contreras denied knowing if this indicted officer was ever his partner, and he denied knowing any Chicago Police officers who are members of the Latin Kings. (*See* Deposition of Luis Contreras, pg 154, attached as Exhibit C). Furthermore, Plaintiff has made no allegations that Officer Contreras' had any connection to former officer Guerrero. Finally, Plaintiff has no allegations that any of the other three defendant officers had any connection to former officers Guerrero and/or Martinez. Therefore, Plaintiff's allegations of any direct connection between the individual defendant officers and former officers Martinez and Guerrero are thin or non-existent at best.

Most importantly, assuming *arguendo* Martinez was at one time Contreras' partner, Plaintiff still would not be entitled to discovery on Guerrero and Martinez because such evidence is completely irrelevant to the allegations against the individual defendant officers in this complaint. There is no probative value of such discovery, and this evidence is highly prejudicial. This is just another example of how Plaintiff plans to misuse the discovery process in order to unfairly prejudice the individual officers.

Plaintiff needs more than a mere allegation that one of the four defendant officers may have worked with a one of the two non-party officers at issue nine plus years ago. Any potential probative value from such evidence is clearly outweighed by the unfair prejudice. Plaintiff

cannot use the alleged bad acts of non-party former police officers as evidence against the individual defendant officers without having at least some evidence that the allegations are connected.

None of Plaintiff's claims against these defendant officers are even remotely close to the allegations lodged against former Officers Guerrero and Martinez. Per the article Plaintiff attached to his motion, Guerrero and Martinez were accused of using their badges to steal and rob people in Northwest Indiana and Illinois. (*See* Chicago Sun-Times Article, Dec. 20, 2011, attached as Exh. D). Guerrero and Martinez would use their badges to stop people in their vehicle or enter their houses and steal money on behest of the Latin Kings. Furthermore, they alleged that Guerrero and Martinez were paid to steal guns, drugs and money. *See* Exh. D.

The requests by the Plaintiff cannot be relevant on 404(b) grounds to show motive, intent, plan or absence of mistake because none of the allegations in this case are even remotely similar to the allegations in the Guerrero/Martinez case. The defendant officers are accused of driving the Plaintiff, a gang member, to a rival gang territory for an alleged nefarious purpose. (*See* Plaintiff's amended complaint attached as Exh. E). Plaintiff also alleges that while driving to the rival gang territory, Officers Contreras and LaCasa pulled over and Officer Contreras stepped out of the police SUV and opened the back door where Plaintiff was located, and acted like he was going to hit the Plaintiff. (*See* Plaintiff's Depostion at pgs. 286-87, attached as Exh. F). Plaintiff testified that Contreras never hit him. (*See* Exh. F at pg. 288). Plaintiff never claimed that he was struck, hit or kicked by any of the defendant officers. Plaintiff claims that Officers Contreras and LaCasa then drove the Plaintiff to rival gang territory, where numerous rival gang members were present. Plaintiff claims that the officers took Plaintiff to the area and allowed the rival gang members to taunt him. Per the Plaintiff, the officers then removed the Plaintiff from

this area, drove him to another area and dropped him off (Plaintiff claims he was dropped off in rival gang territory and he ran to his friend's home; however, Plaintiff made no claims that any rival gang members were present).

After a complete review of all of the Plaintiff's allegations, there are no claims that any of the Defendant Officers did anything remotely similar to the allegations made against Guerrero or Martinez. Plaintiff never stated that he was robbed by any defendant officer. He never claimed that any of the defendant officers attempted to rob his home or asked for any addresses in order to rob or steal from others. In fact, Plaintiff never used the terms rob, steal, drugs or money in any of his allegations against defendant officers, which are the allegations made against the non-defendant former officers Guerrero and Martinez.

Instead, under 404(b), the only documents that are discoverable and may possibly be relevant to show propensity, intent, motive or absence of mistake by the individual defendants to engage in the conduct alleged by Plaintiff are the individual defendant officers CR files. As stated in open court, the City has already agreed to produce all of the individual defendants' CRs. Therefore, Plaintiff will have access to all of the previous allegations of misconduct against the individual defendants to use as evidence under 404(b).

Furthermore, Plaintiff is understating the magnitude of their requests. Plaintiff is requesting the entire work history of the two non-party former police officers; the two non-party officers' CR files; and records from any City investigation into the involvement of Guerrero, Martinez or other Chicago police officers in the Latin Kings street gangs. Plaintiff is requesting hundreds or thousands of pages of documents. The undue burden, cost and overbreadth of this production request speaks for itself. Plaintiff wants the entire CR files for non-party former officers Guerrero and Martinez. It is unduly burdensome to have the City locate, pull and copy

6

the entire CR files of all of the allegations of bad acts by two former police officers who are not involved in the case at hand. Furthermore, Plaintiff wants the "City investigation into the involvement of Guerrero, Martinez **or other Chicago police officers in the Latin Kings street gang**." (emphasis added) (*See* Plaintiff's Motion to Compel, pgs 6-7; *see also*, Defendants' Group Exh. B, also attached to Plaintiff's Motion to Compel as his Group Exh. A). Plaintiff's request does not end with non-party former officers Guerrero and Martinez; instead, Plaintiff wants potential information regarding other non-party police officers. By allowing the Plaintiff to obtain information about Guerrero and Martinez, this court will be going down a slippery slope in which there may be no end to the type of non-party information the Plaintiff may request. This request is baseless and the information is completely irrelevant to determining the liability of the four defendant officers in regards to their conduct towards Plaintiff. This is highly prejudicial information, which is only meant to somehow connect the individual defendant officers to these indicted former police officers who are not involved in this case.

## Conclusion

The information Plaintiff is requesting in his Motion to Compel is completely irrelevant, unduly burdensome and highly prejudicial. Plaintiff is not requesting this information for any legitimate discoverable purpose. Instead, Plaintiff is attempting to contaminate the mind of the jurors. Plaintiff's requested discovery is not intended to promote justice, but to create a trial that

is unfair and prejudicial to the individual defendant officers.   Therefore, Defendants respectfully request that this court denies Plaintiff's Motion to Compel.


Respectfully submitted,


By: /s/ *Eileen M. Letts*
One of the Attorneys for Defendants

Eileen M. Letts
Allen P. Walker
Kenya A. Jenkins-Wright
GREENE AND LETTS
Attorneys for Defendants+-
111 W. Washington, Suite 1650
Chicago, Illinois 60602
312-346-1100
X:\CITY OF CHICAGO\CASTILLO 0059-00051\PLEADINGS\Response to Motion to Compel.docx