IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MIGUEL ANGEL CASTILLO, )
)
Plaintiff, )
) Civil Action No.: 11 C 7359
v. )
) Suzanne B. Conlon, Judge
THE CITY OF CHICAGO, *et al.*, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Defendant City of Chicago ("City") moves to bifurcate the § 1983 municipal liability claims in this suit alleging misconduct by Chicago police officers, and to stay discovery and trial on the municipal liability claims. For the reasons stated below, the City's motion is granted.

### I. Background

Miguel Angel Castillo alleges that on March 19, 2011, City of Chicago police officers stopped him while he was walking down the street. Though Castillo contends he was not committing any crimes, the police drew their guns and began questioning him. He was allegedly handcuffed, searched and then placed in the back of a police vehicle. The police then transported Castillo to an area of town known to be controlled by the Latin Kings gang. Along the way, he alleges the police harassed and assaulted him. Once in Latin Kings territory, the police allegedly opened the doors of the vehicle and a crowd of men in the area began to swarm, threatening Castillo and flashing gang signs. The police eventually drove a short distance still within known Latin Kings territory, and released Castillo without charging him with any crime.

1

Castillo filed this suit under 42 U.S.C. § 1983. He asserts Chicago police officers Susana La Casa, Michael Edens, Gregory Sweeney, and unknown Chicago police officers ("individual defendants") violated his constitutional rights through various means, including unreasonable seizure, violation of substantive due process rights, false arrest and unlawful detention, failure to intervene, and conspiracy to deprive him of his constitutional rights. In addition, Castillo pursues these claims against the City under *Monell v. Department of Social Services*, 436 U.S. 658 (1976), alleging the City's policies and practices are responsible for constitutional violations. In addition, Castillo asserts numerous state law claims arising from the same alleged misconduct. The City now moves to bifurcate Castillo's § 1983 municipal liability claims and to stay discovery and trial of those claims. Castillo opposes the motion.

## II. Legal Standard

Federal Rule of Civil Procedure 42(b) authorizes the court to order a separate trial of one or more separate claims for convenience, to avoid prejudice, or to expedite and economize. Only one of these criteria need to be satisfied for a court to order a separate trial. *Treece v. Hochstetler*, 213 F.3d 360, 365 (7th Cir. 2000). The party seeking bifurcation must demonstrate that judicial economy would be served and that no party would be prejudiced by separate trials. *Burton Wells, Ltd. v. Indian Harbor Ins. Co.*, No. 08 C 4946, 2009 WL 8463694, at *1 (N.D. Ill. July 13, 2009) (Zagel, J.). The court has broad discretion in deciding whether to order bifurcation and analyzes each motion on a case-by-case basis. *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000).

## III. Analysis

### A. Economy to Litigants and the Court

The City argues that the court should limit discovery to Castillo's claims against the individual defendants. Under Illinois law, municipalities are required to pay § 1983 tort judgments entered against their officers acting within the scope of their employment. *See* 745 ILCS 10/9-102 (West 2012); *Wilson v. City of Chicago*, 120 F.3d 681, 683 (7th Cir. 2005). If one of the individual defendants is found to have violated Castillo's constitutional rights, the City offers to stipulate to entry of judgment against it for compensatory damages and reasonable attorney's fees. The City's offer applies whether the violation is determined by the court or by a jury and irrespective of whether the individual defendants successfully assert a qualified immunity defense. If Castillo fails to establish a constitutional violation by one of the individual defendants, the City argues he has no *Monell* claim because a constitutional violation is a necessary predicate to the City's liability. In support of its argument, the City cites *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (finding excessive force claim not actionable against a municipality based on the conduct of one of its officers where the jury concluded the officer inflicted no constitutional harm). The City contends bifurcation under either scenario serves judicial economy by allowing the parties to avoid burdensome discovery and a lengthy trial associated with Castillo's *Monell* claim. Castillo counters that bifurcation would lead to duplication of effort and unnecessary complexity.

*1. Scope of Monell discovery.*

The City argues *Monell* discovery imposes a substantial burden that could be avoided through bifurcation. Castillo insists the discovery is narrowly tailored to a highly specific type of

3

conduct – unlawfully seizing innocent civilians and forcing them into dangerous gang territories for improper reasons – presenting no significant discovery burdens. Where a plaintiff alleges a wide-ranging set of municipal policies and practices, courts are more inclined to find that claims of municipal liability are burdensome and time consuming. *See Terry v. Cook County Dep't of Corrs.*, No. 09 C 3039, 2010 WL 2720754, at * 2 (N.D. Ill. July 8, 2010) (Dow, J.) (finding wide-ranging set of alleged policies and practices characteristic of burdensome and time-consuming *Monell* claims). Castillo alleges the City failed to: adequately train, supervise and control its officers; adequately investigate, punish and discipline prior instances of misconduct; take proactive steps to remedy police officer misconduct, and condoned a "code of silence" in the Chicago Police department regarding misconduct. Am. Compl. at ¶ 36. Though the alleged misconduct at issue may be narrow, these allegations involve a wide-ranging set of polices and practices suggesting litigation of the *Monell* claims will require extensive effort. The court has reviewed many of Castillo's discovery requests. Several include broad discovery demands characteristic of typical *Monell* claims. Castillo requests, for example:

> 34. All Documents relating to any changes made in the last ten years to the Chicago Police Department's policies, practices, and training programs relating to: (1) use of force; (2) detaining persons pursuant to a search without a warrant; (3) transport of detainees to locations that could reasonably be expected to expose them to increased risk of harm; (4) gangs; (5) use of contact cards.
> ...
> 39. All Documents considered, reviewed, analyzed, or created by any City of Chicago policymaker(s) relating to his or her knowledge - whether constructive, implied, or actual - of facts relevant to Plaintiff's claims that the City failed to properly investigate, discipline, and/or permit the criminal prosecution of officers accused of misconduct. This Request seeks Documents from 2001 to the present.
> ...
> 42. All Complaints relating to a civilian's allegation against a Chicago Police officer, sergeant, or other rank, regarding (i) taking an individual to a possible gang territory for no valid purpose; (ii) treatment/handling of civilians who may be members of rival gangs;

and/or (iii) alleged cooperation between a Chicago Police Department employee and a gang member; where such Complaint was made at any time between January 1, 2001 and the present. This request includes, but is not limited to documents that reflect (a) whether the Complaints were investigated, and if so, by whom; and (b) the disposition of any such investigation, whether ultimately deemed (un)sustained, (un)founded, or any other finding.

Mot. at Ex. A.

Discovery requests such as these, relating to generalized City policies and practices, place significant burdens on the discovery process. *See Clarett v. Suroviak*, No. 09 C 6918, 2011 WL 37838, at *1-2 (N.D. Ill. Jan. 2, 2011) (Gottschall, J.) (finding economic benefits to bifurcation where plaintiff propounded a significant amount of *Monell* discovery); *cf. Medina v. City of Chicago*, 100 F. Supp. 2d 893, 894 (N.D. Ill. 2000) (Kennelly, J.) (stating *Monell* claims involve a heavy burden of discovery).

Castillo argues the City's characterization of the scope of Monell discovery is not only inaccurate but moot; bifurcation does not obviate the necessity of *Monell* discovery because *Monell* evidence bears on the individual defendants' liability. Citing Fed. R. Evid. 406, he argues evidence that the police routinely engage in the type of misconduct at issue here may be used to rebut the individual defendants' mistake of fact defense. This argument is unpersuasive as a reason to avoid bifurcation. Castillo's § 1983 claims arise in the context of an arrest implicating the Fourth Amendment. *Graham v. Conner*, 490 U.S. 386, 394 (1989). An "objective reasonableness" standard governs Fourth Amendment claims; the underlying intent or motivation of the individual defendants is irrelevant. *Chapman v. Keltner*, 241 F.3d 842, 847 (7th Cir. 2001); *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998). Even if evidence of similar misconduct is relevant, Castillo has not demonstrated his claims against the individual

5

defendants so overlap with the *Monell* claims as to undermine any efficiencies to be derived from bifurcation.

*2. Discovery disputes.*

The City argues bifurcation potentially avoids *Monell*-related discovery disputes because the *Monell* claims may never arise. Castillo counters bifurcation would actually spawn additional discovery disputes because there is no bright line between what is and what is not *Monell* discovery. He concludes *Monell*-related discovery cannot be neatly siphoned from the case against the individual defendants.

The court will not speculate as to the impact bifurcation would have on the likelihood of future discovery disputes. For now, it is enough that the court has reviewed at least a portion of the discovery requests at issue and found a number of them involve broad discovery demands typical of *Monell* discovery. *See Demouchette v. Dart*, No. 09 C 6016, 2011 WL 679914, at *10 (N.D. Ill. Feb. 16, 2011) (Keys, M.J.) (finding the breadth of *Monell* discovery requests outweighed risk of discovery disputes due to bifurcation). The court may reconsider the stay of *Monell* discovery if good cause is shown.

*3. Summary judgment and trial.*

The City contends its offer to stipulate to entry of judgment against it if Castillo succeeds against one of the individual defendants on his § 1983 claims also means there is a significant likelihood that bifurcation will fully resolve the case without summary judgment or a lengthier, more complex trial on the *Monell* issues. Castillo counters two trials will be necessary if the case is bifurcated. In support of his argument, Castillo cites *Thomas v. Cook County Sheriff's Department*, 604 F.3d 293 (7th Cir. 2010).

In *Thomas*, the Seventh Circuit considered whether *Los Angeles v. Heller*, 475 U.S. 796 (1986) established a firm rule requiring a showing of individual officer liability under § 1983 before a municipal liability claim could succeed. *Id.* at 304-05. The *Thomas* court concluded that the actual rule in *Heller* was much narrower: "[A] municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an *inconsistent verdict*." *Id.* at 305 (emphasis in original). To determine whether a municipality's liability depends on the liability of its officers, courts must look to the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth. *Id.* Because *Thomas* involved allegations of deliberate indifference, the court held a jury verdict finding against liability on the part of the individual municipal employees was not inconsistent with a verdict that the municipality was liable. *Id.* A claim of deliberate indifference requires a showing that an official acted with a sufficiently culpable state of mind. *Id.* at 301 (citation omitted). This involves a two-part inquiry to determine whether the official had subjective knowledge of the risk to the plaintiff's health and also disregarded that risk. *Id.* The jury "could have found that the [municipal employees] were not *deliberately indifferent* to Smith's medical needs, but simply could not respond adequately because of well-documented breakdowns in the County's policies . . . ." *Id.* (emphasis in original). Neither Castillo nor the City directly address whether the holding in *Thomas* applies to this case. Nevertheless, the court will review each of the *Thomas* elements in turn.

Castillo's claims of unreasonable seizure and false arrest/unlawful detention must be brought under the Fourth Amendment because they arise in the context of an arrest by individual police officers. Therefore, the majority of Castillo's claims against the individual defendants are

governed by a standard of objective reasonableness. *Chapman*, 241 F.3d at 847; *Kelley*, 149 F.3d at 646. Whereas the individual officers in *Thomas* could possibly rely on municipal polices and practices to negate the element of intent, here the subjective state of mind of the individual defendants is irrelevant to establishing liability. Municipal liability arising in the context of an arrest depends on a determination that one or more municipal employees violated the plaintiff's constitutional rights. *See, e.g., Sow v. Fortville Police Dept.*, 636 F.3d 293, 300-01 (7th Cir. 2011) (plaintiff unable to show municipal liability because he failed to establish constitutional deprivation arising from his arrest); *Guzman v. City of Chicago*, No. 09 C 7570, 2011 U.S. Dist. LEXIS 20031, at *5-6 (N.D. Ill. Mar. 1, 2011) (Kocoras, J.) (municipal liability depends on finding individual officers who allegedly administered excessive force violated plaintiff's constitutional rights); *Clarett*, 2011 WL 37838, at *2 (municipal liability in suit alleging false arrest depends on establishing individual defendant violated plaintiff's constitutional rights). The first *Thomas* element suggests the City's liability depends on a finding that individual police officers violated Castillo's constitutional rights.

Castillo alleges several theories of municipal liability, including the City's failure to adequately train, supervise, and control its police officers. There can be no municipal liability in a failure to train case without an underlying violation by a municipal employee. *Sallenger v. City of Springfield*, 630 F.3d 499, 504 (7th Cir. 2010). If his § 1983 claims against the individual defendants fail, so do his failure to train allegations against the City. Accordingly, this theory of municipal liability is inextricably linked with claims of liability against the individual defendants. The second *Thomas* element suggests not all of Castillo's claims against the City are independent of those against the individual defendants.

8

Looking to *Thomas*' third factor, the individual defendants have all asserted qualified immunity as an affirmative defense. Castillo argues the defense raises the possibility that he could proceed against the City under *Monell* even if the individual defendants are not liable for their alleged § 1983 violations. The City does not dispute this, but counters the issue is moot because it will consent to municipal liability if any of the individual defendants violated Castillo's constitutional rights, even if they prevail based on qualified immunity. Castillo rejects that argument claiming the stipulation involves an unworkable procedure and citing *Bell v. City of Chicago*, 09 C 4537, 2010 WL 432310 (N.D. Ill. Feb. 3, 2010) (Der-Yeghiayan, J.). In *Bell*, the court considered whether a stipulation of the kind proposed by the City in this case supported bifurcation of *Monell* claims. *Id.* at *3. The court found it did not because the stipulation would add unnecessary confusion to the individual officer's trial. *Id.* Rather than simply finding in favor of the officer or in favor of the plaintiff, the jury would need to make a separate finding on the verdict form as to whether the officer violated the plaintiff's constitutional rights. *Id.*

The court disagrees with the determination of this issue in *Bell*. "The question of a defendant's qualified immunity is a question of law for the court, not a jury question." *Warlick v. Cross*, 969 F.2d 303, 305 (7th Cir. 1992) (citing *Alvardo v. Picur*, 859 F.2d 448, 451 (7th Cir. 1988); *See also* Federal Civil Jury Instructions of the 7th Circuit, § 7.18, Qualified Immunity, Committee Comments. Though there are situations in which the court may allow the jury to determine disputed issues of fact upon which the court may base its legal determination of qualified immunity, it uses special interrogatories to do so. *Id.* Even in such a case, the jury would still be required to make additional findings apart from the ultimate question of liability. Accordingly, Castillo's argument that the qualified immunity issue would add confusion to the

9

individual defendants' trial lacks merit. Finally, the City's stipulation explicitly states the City will pay *Monell* damages if a constitutional violation is determined either by the finder of fact or on a motion for summary judgment. Reply at Ex. A. If the issue of the individual defendants' liability is determined on a motion for summary judgment, a jury verdict may not be required at all. The court finds that Castillo's suit does not satisfy any of the *Thomas* elements.

There is no doubt that including the § 1983 claims against the City would add greater length and complexity to trial than if the suit were to proceed against the individual officers alone. *Medina*, 100 F. Supp. 2d at 894. Similarly, the burdens of *Monell* discovery are also substantial. The realistic potential to avoid these dual burdens serves the interests of judicial economy and weighs in favor of bifurcation.

**B. Prejudice to the parties.**

The City argues bifurcation is necessary to prevent undue prejudice that would result from a single trial. Introduction of *Monell* evidence, it argues, could unfairly sway the jury's view of the facts against the individual defendants. The City also argues, in light of Illinois law and its offer to stipulate, Castillo's *Monell* claim is essentially worth little to him and practically speaking benefits only his counsel. Castillo counters that the risk of prejudice is exaggerated, noting limiting instructions would prevent undue prejudice. He maintains much of the *Monell* evidence is independently relevant to his claims against the individual defendants. Castillo also rejects the inference that his *Monell* claim is trivial. He argues that justice and accountability are important objectives not satisfied by the City's stipulation to pay damages.

*1. Prejudice to the individual defendants.*

Castillo does not dispute the prejudicial nature of *Monell* evidence to the individual

defendants. Instead he argues improper jury perception may be remedied with limiting instructions. He adds *Monell* evidence is independently relevant to his claims against the individual defendants. Castillo states elsewhere in his brief "[e]vidence that the department routinely engages in unlawful seizures [of the kind the individual defendants are accused] would tend to show that it is more likely true than not true that Contreras and La Casa engaged in such behavior in this case." Resp. at 6. He further states "civilian complaints regarding other similar unlawful seizures involving gangs" is "highly germane evidence [necessary] to prove his case [against the individual defendants]." Castillo apparently intends to proffer evidence of other non-party police officers' misconduct to establish liability on the part of the individual defendants. Without making relevancy or admissibility determinations at this juncture, the possibility of unlawful seizures by other Chicago police officers raises legitimate concerns about the individual defendants' ability to distinguish their own alleged unconstitutional acts from those of non-party officers. This concern warrants a finding that some prejudice could result absent bifurcation of the *Monell* claims.

2. *Prejudice to Castillo.*

The City contends that its offer to stipulate to judgment eliminates any prejudice due to bifurcation. First, if Castillo prevails against any of the individual defendants on his § 1983 claim, the City has agreed to entry of judgment against it for compensatory damages and reasonable attorney's fees. Castillo would not be entitled to recover any additional compensatory damages from the City by suing pursuant to *Monell*. *Spanish Action Comm. of Chicago v. City of Chicago*, 766 F.2d 315, 321 (7th Cir. 1985). Secondly, the stipulation does not extinguish any right Castillo has to pursue his *Monell* claims if he fails to establish individual liability. Castillo

counters that monetary damages are not the sole driver of a lawsuit. He argues that the impact of having the City held accountable for its misconduct pursuant to the adjudicative process serves an important deterrence function. In this regard, Castillo contends that the City's offer to stipulate to damages is an inadequate remedy because it explicitly disclaims *Monell* liability. There is no reason to believe that monetary damages have any less deterrent effect than these non-economic factors. *See Parker v. Banner*, 479 F. Supp. 2d 827, 829 (N.D. Ill. 2007) (Zagel, J.). Castillo can identify no substantive defect with the stipulation itself. If he establishes a constitutional injury, the City's stipulation requires payment of compensatory damages and reasonable attorney's fees regardless of qualified immunity. The stipulation permits Castillo to recover damages from the City without the need for a trial.[1] Further, the stipulation does not bar him from asserting *Monell* claims should he fail to establish individual liability and a valid theory of liability remains against the City. The balance of the equities favors bifurcation.

### III. Conclusion

The court finds the scope of *Monell* discovery and its associated burdens is significant, there is a realistic possibility that staying trial on the *Monell* claims will avoid the need for a trial on these claims altogether and none of the parties would be meaningfully prejudiced by a separate trial on these claims. Accordingly, the court grants the City's motion to bifurcate the § 1983 municipal liability claims and to stay discovery and trial on those claims.

---

[1] The City has answered it is without knowledge or information sufficient to form a belief as to whether the individual officers acted within the scope of their employment at the time of Castillo's arrest. City's Answer to Am. Compl. at ¶ 38.

12

ENTER:

May 11, 2012

Suzanne B. Conlon  
United States District Judge